IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAMUEL E. GRIFFITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:20-cv-3455-G-BN |
| | § | |
| CINEPOLIS USA, INC. and BRINKER | § | |
| INTERNATIONAL, INC., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Samuel E. Griffith filed a *pro se* lawsuit against two of his former employers, Defendants Cinepolis USA, Inc. and Brinker International, Inc., specifying claims of discrimination, defamation, and retaliation. *See* Dkt. No. 3. Senior United States District Judge A. Joe Fish referred Griffith's case to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. And the Court granted Griffith leave to proceed *in forma pauperis* (IFP), *see* Dkt. Nos. 4 & 6, subjecting his claims to judicial screening under 28 U.S.C. § 1915(e)(2)(B).

Brinker then moved to dismiss Griffith's claims against it under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for a more definite statement under Federal Rule of Civil Procedure 12(e). *See* Dkt. No. 7. Griffith responded. *See* Dkt. No. 9. And Brinker replied. *See* Dkt. No. 10.

Preliminarily, the undersigned observes that, although Brinker voluntarily moved to dismiss without the Court ordering service of the complaint under the IFP

statute, Brinker's doing so does not prevent the Court's screening Griffith's claims against both Brinker and Cinepolis. A district court is, in fact, required to screen a civil action filed IFP and may summarily dismiss that action, or any portion of the action, if, for example, it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The undersigned therefore enters these findings of fact, conclusions of law, and recommendation that the Court should grant Brinker's motion to dismiss in part and deny it in part and dismiss Griffith's claims against Brinker with leave to amend. And, as specified below, the further pretrial management of this case will depend on whether Griffith elects to file an amended complaint.

## Applicable Background

The facts that Griffith alleges to support his claimed violations of the Title VII of the Civil Rights Act of 1964, as amended, for racial discrimination and retaliation, and claim of defamation are:

> 7. Plaintiff was employed by Defendant Cinepolis USA, Inc.as an Assistant General Manager (AGM). He held that position from June 22, 2019 to August 6, 2020 prior to his constructive discharge on August 7, 2020.
> 8. Plaintiff was employed by defendant Brinker International, Inc. from February 26, 2013 until September 10, 2018.
> 9. On July 20, 2020 Plaintiff was accused of misconduct by Jessica Sanchez, Interim General Manager (IGM) Cinepolis – Victory Park, of alleged deficiencies in performance on the company's Teams communication platform.
> 10. The message alleged that the plaintiff lacked integrity and was dishonest regarding preventive maintenance on movie projectors at the Victory Park location.
> 11. On August 4, 2020 Plaintiff addressed the disparagement with Jessica Sanchez (IGM) and Jeremy Hilburn (GM).
> 12. At the meeting, Jessica Sanchez alleged that the previous General

Manager, an African American, had falsified maintenance and that I was doing the same.

13. She also affirmed her beliefs by saying she had never worked with me before and her past experiences warranted the distrust.

14. As proof, Jessica alleged that the maintenance was noted as being completed on the same day, but it was impossible to do so because there were eight projectors and the maintenance required 3 hours to perform.

15. On August 6, 2020 Plaintiff was informed by Barrett Cox, Regional Manager (RM) of a demotion to go into effect prior to opening the following week on August 14, 2020.

16. The Assistant General Manager (AGM) position for Cinepolis – Victory Park would be filled by Jamit Vashee. This was the position for which I was hired.

17. Plaintiff was offered a Service Manager position at Cinepolis – Victory Park.

18. The service manager position would be a non-exempt position and would require the signing of a Return to Work Letter (RWL).

19. On August 7, 2020 Plaintiff informed Jeremy Hilburn, GM, that he could not accept the position of service manager and would resign.

20. On August 9, 2020 Plaintiff learned from Barrett Cox the Regional Manager (RM) that he was aware of the meeting on August 4, 2020 between Plaintiff, Jessica Sanchez (IGM) and Jeremy Hilburn (GM).

21. On August 9, 2020 Plaintiff informed Barrett Cox (RM) that he could not accept the position and because of the proximity of the conversation on August 4 and the decision to demote the Plaintiff on August 6, 2020 that he believed that they were related.

22. On August 15, 2020, Plaintiff filed a complaint with the EEOC alleging disparate treatment by Cinepolis USA, Inc.

23. On September 22, 2020, EEOC provided a right to sue letter to Plaintiff.

24. Prior to the events of 2020, around July of 2019, Jamit Vashee was as a service manager for Movie House & Eatery McKinney.

25. He was subsequently promoted to AGM upon his arrival to Cinepolis Victory Park around February of 2020. This promotion created two positions of AGM at the Victory Park location in March of 2020.

26. Prior to working for Cinepolis USA, Inc., during his time at Brinker International, Inc. between 2013 and 2018, Plaintiff and Jamit Vashee worked as restaurant managers for Brinker's Brand, Chili's Grapevine Mills and Chili's Flower Mound, respectfully.

27. In March of 2019, after leaving employment of Brinker International, Inc., Plaintiff filed a complaint with the EEOC regarding unlawful business practices by Brinker International, Inc and lists a portion below:

    a. Discipline Standard are biased and unfair and establishes a

Desperate Impact and Desperate Treatment of African Americans at Chili's Bar and Grill.

b. The company's policies for promotion and transfer are discriminatory and violate Title VII of Civil Rights Act of 1964.

c. The company's criteria for access to open positions violate Title VII of Civil Rights Act of 1964.

d. The administration of these plans (discipline, promotion, transfer) violates Title VII of Civil Rights Act of 1964.

e. The manager position and expectations violate the FLSA.

Dkt. No. 3 at 2-4.

## Legal Standards

"The language of § 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)." *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (per curiam). And dismissal for failure to state a claim under either Section 1915(e)(2)(B)(ii) or Rule 12(b)(6) "turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam)), as neither the IFP statute nor the Federal Rules of Civil Procedure "countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 574 U.S. at 11.

In deciding to dismiss a claim upon which relief may be granted, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Such a dismissal is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555; *see also Sewell*, 974 F.3d at 582 ("Although this framework is one-sided, the issue 'is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims.' The other side will have its say later." (quoting *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *vacated on other grounds*, 113 F.3d 1412 (5th Cir. 1997))).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* And "[a] claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* Instead, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson*, 574 U.S. at 12 (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities*, 920 F.2d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."))).

"*Pro se* complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient ....'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), then *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam)). And "liberal construction does not require that the Court ... create causes of

action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff" and would "transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)). And, "[w]hen 'an allegation is contradicted by the contents

of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And a plaintiff may not amend his allegations through a response to a motion to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g., Klaizner v.*

*Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

Further, "[a] motion for a more definite statement under Rule 12(e) is available where the pleading is so vague or ambiguous that the party cannot reasonably prepare a response." *Valdez v. Celerity Logistics, Inc.*, 999 F. Supp. 936, 946 (N.D. Tex. 2014) (quoting *Conceal City, L.L.C. v. Looper Law Enforcement, LLC*, 917 F. Supp. 2d 611, 621 (N.D. Tex. 2013); internal quotation marks omitted). Such motions are not a substitute for discovery, and "[w]hen a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede its ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted." *Id.* (citations, quotation marks, and original brackets omitted).

## Analysis

I.   The Court should grant Brinker's motion to dismiss and for a more <u>definite statement in part and deny it in part.</u>

Brinker argues that Griffith's Title VII claims are time barred, that he failed to administratively exhaust those claims, that he may not plead a Title VII harassment claim, and that he has not alleged plausible Title VII hostile workplace and retaliation claims against Brinker. Brinker further argues that Griffith's defamation claim fails. And Brinker requests, in the alternative, that the Court order Griffith to provide a more definite statement.

## A.    Brinker is not entitled to dismissal under Rule 12(b)(6) based on limitations or failure to exhaust.

Before a plaintiff can file a suit in federal court alleging employment discrimination under Title VII, he must exhaust his administrative remedies. He exhausts those remedies by filing "a timely charge with the EEOC, or with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice." "Exhaustion occurs when [a] plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." The filing of an EEOC charge "'is a precondition to filing suit in district court.'"

*Reed v. Fas Pac Store*, No. 7:18-cv-164-O-BP, 2020 WL 853908, at *3 (N.D. Tex. Feb. 4, 2020) (citations omitted), *rec. accepted*, 2020 WL 833419 (N.D. Tex. Feb. 20, 2020).

And, "[a]fter a claimant receives a Notice-of-Right-to-Sue from the EEOC, Title VII permits them ninety days to file a complaint." *Cotton v. Russell*, 830 F. App'x 145, 147 (5th Cir. 2020) (per curiam) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002)).

"These 'restrictions are not jurisdictional limitations on [a federal court's] ability to hear the case; rather they are 'claim-processing rules, which "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times."'" *Id.* (quoting *Davis v. Fort Bend Cnty.*, 139 S. Ct. 1843, 1849 (2019) (quoting, in turn, *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011))).

Put differently, they are affirmative defenses "that should be pleaded." *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307 (5th Cir. 2019) (citations omitted), *aff'd*, 139 S. Ct. 1843. And, "[t]o obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the successful affirmative defense must appear clearly on the face of the pleadings. In other words, [Brinker is] not entitled to dismissal under Rule 12(b)(6) based on

[either] affirmative defense unless [Griffith] has pleaded [himself] out of court by admitting to all of the elements of the defense." *Taylor v. Lear Corp.*, No. 3:16-cv-3341-D, 2017 WL 6209031, at *2 (N.D. Tex. Dec. 8, 2017) (citations, quotation marks, and original brackets omitted).

Griffith alleges that he "filed a charge of Discrimination and Retaliation with the EEOC on September 15, 2020 within 180 days of the last discriminatory event" and that "[t]his lawsuit was also filed[, on November 11, 2020,] within ninety days of [his] receipt of a Notice of Dismissal and Right to Sue Letter issued by the EEOC on September 22, 2020." Dkt. No. 3, ¶¶ 28, 29. He attaches neither document to his complaint. Nor need he. So this would seem to end the inquiry with the conclusion that, at least at this stage, Griffith has not pleaded himself out of court.

Not so, according to Brinker. And, in support, Brinker attaches as exhibits to its motion to dismiss an EEOC charge dated May 3, 2019 – asserting that Brinker subjected Griffith to race and age discrimination from May 20, 2018 to September 10, 2018 – and a right-to-sue letter dated May 9, 2019. *See* Dkt. Nos. 7-1, 7-2.

Neither exhibit appears on the face of Griffith's complaint. Nor has either become part of the pleadings by being attached to the complaint. *See* FED. R. CIV. P. 10(c); *In re Katrina*, 495 F.3d at 205; *Gill*, 941 F.3d at 511. But Brinker argues that "[t]he viability of Griffith's claims against Brinker is based upon [these exhibits]; thus, [they] are central to his claims and should be considered part of the pleadings." Dkt. No. 10 at 3 (citing *Collins*, 224 F. 3d at 498-99).

The undersigned cannot agree with this statement of the law. As provided

above, it is true that documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim," *Collins*, 224 F.3d at 498-99, and "the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims," *Kaye*, 453 B.R. at 662.

But "'documents used to support a defendant's affirmative defense appear not to fall within [this] exception.'" *In re Northstar Offshore Grp.*, 616 B.R. 695, 710 (Bankr. S.D. Tex. 2020) (quoting *Xtreme Power Plan Trust v. Schindler (In re Xtreme Power Inc.)*, 563 B.R. 614, 629 (Bankr. W.D. Tex. 2016)); *see also Anderson v. Octapharma Plasma, Inc.*, No. 3:19-cv-2311-D, 2020 WL 7245075, at *7 (N.D. Tex. Dec. 9, 2020) ("[T]he Consent Forms are not 'central' to plaintiffs' negligence claim because they are not 'necessary to establish' any of the essential elements of the claim. In fact, as set out in their motions, defendants rely on these forms solely as a defense to plaintiffs' negligence claim. Accordingly, the court will not consider them in deciding whether to dismiss plaintiffs' negligence claim." (citations and footnotes omitted)); *Douglas v. Bayview Loan Servicing, LLC*, No. CA 11-00495-KD-C, 2012 WL 345364, at *4 (S.D. Ala. Jan. 13, 2012) ("[T]he documents attached to the defendant's motion are not 'central to the plaintiff[s'] claim,' but are, instead, central to the defendant's affirmative defense …, and therefore, are not covered by this doctrine/exception." (citations omitted)), *rec. adopted*, 2012 WL 345363 (S.D. Ala. Feb. 1, 2012).

As the EEOC charge and right-to-sue letter attached to Brinker's motion to dismiss are neither mentioned in Griffith's complaint nor central to – that is, necessary to establish an essential element of – a claim that he has made but are instead necessary to establish Brinker's affirmative defenses of limitations and failure to exhaust, the Court may not consider the exhibits to Brinker's motion under Rule 12(b)(6). And Brinker has not shown that it is entitled to dismissal under this rule based on these affirmative defenses.

> ### B.    Brinker is entitled to dismissal under Rule 12(b)(6) because Griffith has not alleged plausible claims against it.

Griffith's allegations as against Brinker are limited. He alleges that Brinker employed him from 2013 to 2018; that he filed an EEOC charge against Brinker in 2019; in support of his discrimination claim, that, "between 2018 and 2020," Brinker "unfairly harassed [him] by providing false information to Cinepolis USA and as a result of protected actions taken by [him], Dkt. No. 3, ¶ 35; in support of his defamation claim, that Brinker "provided false information to Cinepolis USA, Inc. as a result [of his filing of the EEOC charge against Brinker in 2019]," *id.*, ¶¶ 43, 27; and, in support of his retaliation claim, that, in 2018, Brinker "provided Jamit Vashee with [his] personal evaluations and performance reviews," *id.*, ¶ 49.

To plausibly allege (and ultimately prove) discrimination and retaliation claims under Title VII requires that a plaintiff either rely on direct evidence of discrimination or alternatively proceed under a burden-shifting analysis. "'[D]irect evidence is rare'" and has been defined by the Fifth Circuit "as 'evidence which, if believed, proves the fact without inference or presumption.'" *Clark v. Champion Nat'l*

*Sec., Inc.*, 952 F.3d 570, 579 (5th Cir. 2020) (footnotes omitted). For example, "'[a] statement or document which shows "on its face that an improper criterion served as a basis – not necessarily the sole basis, but a basis – for the adverse employment action [is] direct evidence of discrimination.'"" *Id.* (footnote omitted). And, because Griffith makes no allegation implicating direct evidence of Title VII discrimination or retaliation, he must proceed under the applicable burden-shifting analysis and first articulate a prima facie case as to each cause of action.

> The prima facie elements of discrimination are that a plaintiff
>
> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)). Likewise, "[i]n the retaliation context, a *prima facie* case requires a showing that (1) [the plaintiff] engaged in a protected activity pursuant to one of the statutes, (2) an adverse employment action occurred, and (3) there exists a causal link connecting the protected activity to the adverse employment action." *Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 321 (5th Cir. 2014) (citation omitted).

A plaintiff need not establish a prima facie case at the pleading stage. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019); *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). But a plaintiff must "plead sufficient facts on all of the ultimate elements of his claim to make his case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (citations omitted); *see*

*also Meadows v. City of Crowley*, 731 F. App'x 317, 318 (5th Cir. 2018) (per curiam) ("*Raj*, however, does not exempt a plaintiff from alleging facts sufficient to establish the elements of her claims." (citations omitted)).

So, at this stage, the Court must ask whether Griffith has provided enough facts to allege an actionable claim of employment discrimination or retaliation under Title VII. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002). And, if he "has not pled such facts," it is "proper[ to] dismiss [his] complaint." *Meadows*, 731 F. App'x at 318; *see also Cicalese*, 924 F.3d at 766-67 (noting that the district court's "task is to identify the ultimate elements of [the applicable employment-related] claim and then determine whether the" plaintiff has pled those elements but that a "district court err[s if it] require[es a plaintiff] to plead something beyond those elements to survive a motion to dismiss").

As against Brinker, Griffith has yet to plead "sufficient facts on all of the ultimate elements" required to allege a plausible Title VII discrimination claim. *Chhim*, 836 F.3d at 470.

But, in so far as his allegations against Brinker seem to be limited to that Brinker provided "false information" to his subsequent employer and that Brinker provided his evaluations and performance reviews to Vashee because Griffith filed an EEOC discrimination charge against Brinker, *see* Dkt. No. 3, ¶¶ 27, 35, 43, 49, the facts alleged as against Brinker appear to be raise just a retaliation claim.

Proceeding under this plausibility, Griffith did engage in protected activity by filing the EEOC charge against Brinker. And,

> [f]or purposes of Title VII's anti-retaliation provision, the [United States] Supreme Court has held that an adverse employment action is defined slightly more broadly than the term is defined in the employment discrimination context. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006). Specifically, a plaintiff seeking to establish a retaliatory adverse employment action "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (cleaned up).
>
> Title VII's anti-retaliation provisions do not protect employees from "petty slights, minor annoyances, and simple lack of good manners." *Id.* However, retaliatory adverse employment actions also need not rise to the level of ultimate employment decisions. *Id.*; *Donaldson v. CDB Inc.*, 335 F. App'x 494, 506 (5th Cir. 2009). [And], when determining whether an allegedly retaliatory action is materially adverse, courts "look to indicia such as whether the action affected 'job title, grade, hours, salary, or benefits' or caused 'a diminution in prestige or change in standing among ... coworkers.'" *Paul v. Elayn Hunt Corr. Ctr.*, 666 F. App'x 342, 346 (5th Cir. 2016) (quoting *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009)).

*Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826-27 (5th Cir. 2019) (citation modified).

At this stage, under the broader scope defined by *Burlington Northern*, an allegation that a former employer provided false information to a future or current employer plausibly supports the adverse-employment element for a claim of retaliation. *See Chapman v. W. Express, Inc.*, Civ. A. No. 10-0675-WS-C, 2011 WL 780594, at *2 n.3 (S.D. Ala. Feb. 28, 2011) (as to the adverse-employment-action prong, noting "that federal courts around the country have recognized the viability of discrimination claims predicated on a former employer's furnishing of false or negative employment references" (collecting cases)); *see also, e.g.*, *Phillips v. M.I. Quality Lawn Maint., Inc.*, No. 10-20698, 2010 WL 4237619, at *5 (S.D. Fla. Oct. 21, 2010) (explaining that a "negative references can serve as grounds for retaliation

claim even if a future employer does not base hiring decision on the poor reference"

and that, "following *Burlington Northern*, evidence of post-employment blacklisting

and attempts to destroy plaintiff's reputation are actionable even if there is no

evidence that future employment was terminated as a result" (citations omitted)).

But the limited facts that Griffith provides make it difficult to find that he has

plausibly alleged "that a causal connection exists between the protected activity and

the adverse employment action." *Garvin v. Sw. Corr., L.L.C.*, 391 F. Supp. 3d 640,

653 (N.D. Tex. 2019). Essentially, all Griffith has alleged is a vague timeline, which

itself lacks sufficient factual content on this ultimate element of a retaliation claim.

*Cf. Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015) ("To

demonstrate a 'causal link' between the protected activity and the adverse

employment action, a plaintiff must show the defendant 'would not have taken the

adverse ... action but for [her] protected activity.'" (citation omitted)).

> Evidence for a causal connection includes: temporal proximity between
> a protected act and adverse employment action; an employment record
> that does not support the adverse action; and an employer's departure
> from typical policies and procedures. Temporal proximity alone may
> suffice when the acts are separated by weeks, but a gap of five months
> is not sufficient without other evidence of retaliation.

*Garvin*, 391 F. Supp. 3d at 653 (concluding that, even at the pleading stage,

"approximately one year … is too long of a gap to be sufficient without other evidence

of retaliation" (citations omitted)); *see also Benford v. Milwaukee Elec. Tool Corp.*, No.

4:19-CV-179-DMB-JMV, 2021 WL 735642, at *8 (N.D. Miss. Feb. 25, 2021) ("[F]or the

purpose of deciding a motion to dismiss, '[t]emporal proximity alone may suffice when

the acts are separated by weeks.' Here, Jenkins accused Benford of misconduct just

thirteen days after she filed her EEOC charge of discrimination. The formal written warning followed just twelve days after that. This short temporal proximity easily satisfies the causation element for the purpose of a motion to dismiss." (citation omitted)).

In sum, Griffith also has not pled, as against Brinker, "sufficient facts on all of the ultimate elements" required to allege a plausible Title VII retaliation claim. *Chhim*, 836 F.3d at 470.

The Court should therefore dismiss both Title VII claims that Griffith alleges against Brinker.

Similarly, Griffith has not alleged a plausible defamation claim against Brinker.

To maintain a valid defamation claim under Texas law, a plaintiff must demonstrate that the defendant: (1) published a statement; (2) containing assertions of fact that are defamatory, injuring the plaintiff's reputation; (3) while acting with either actual malice, if plaintiff is considered a public official or public figure, or negligence, if plaintiff is a private individual, regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *see generally N.Y. Times v. Sullivan*, 376 U.S. 254, 279-80 (1964). A plaintiff may avoid dismissal of a defamation claim by presenting clear and specific evidence as to each element. *See D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017). "Clear and specific evidence means that the plaintiff 'must provide enough detail to show the factual basis for its claim.'" *Id.* (quoting *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015)).

Defamation may occur through either libel or slander. *See Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018). An action for libel requires the publication of a defamatory statement about the plaintiff to a third party in written or other graphic form. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.001. While slander is defamation in oral form that is likewise published to a third party. *Tatum*, 554 S.W.3d at 623-24.

Libel or slander, the threshold question in a case alleging defamation is "whether the words used 'are reasonably capable of a defamatory meaning.'" *Id.* at 624 (citing *Musser v. Smith Prot. Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987)). A statement is (1) defamatory when it "tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation," TEX. CIV. PRAC. & REM. CODE ANN. § 73.001, and (2) "defamatory per se when it is 'so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed,'" *Tatum*, 554 S.W.3d at 638 (citations omitted). And, unless a statement is verifiably false, it is not defamatory regardless of whether it is in oral or written form. *See id.* at 624.

Viewing Griffith's allegations as true, he has failed to state a plausible claim of defamation against Brinker. For example, as against Cinepolis, he alleges that an interim general manager employed by that defendant falsely accused him of "falsi[fying] preventive maintenance on movie projectors at the Victory Park location," but he merely alleges that Brinker "provided false information to

- 19 -

Cinepolis." Dkt. No. 3, ¶¶ 42, 43. While these allegations may not allege a plausible defamation claim against Cinepolis, they decidedly fail against Brinker, as a mere conclusion fails to plausible allege that statements were in fact false. *See, e.g.*, *Callins v. Swift Transport. Co. of Ariz., LLC*, No. 3:17-cv-1975-C-BN, 2018 WL 4290790, at *6 (N.D. Tex. Feb. 28, 2018) ("Quite simply, Callins's defamation claim would not 'survive a motion to dismiss' under *Twombly* and *Iqbal* because she has failed to 'plead facts sufficient to show' that the defamation claim has 'substantive plausibility' by stating 'simply, concisely, and directly events' that support such a claim – fundamentally, what was said." (quoting *Johnson*, 574 U.S. at 12)), *rec. accepted*, 2018 WL 4283555 (N.D. Tex. Sept. 7, 2018).

II.    The Court should serve Griffith's claims on Cinepolis under the IFP <u>statute</u>.

For purposes of screening, Griffith appears to have alleged a plausible claim against Cinepolis to the extent that he has alleged that Ms. Sanchez (alleged to be employed in management by Cinepolis) accused him of falsifying maintenance based, at least in part, on her experience with a previous African American employee and that these accusations led to Griffith's demotion. *See* Dkt. No. 3, ¶¶ 9-15. The undersigned expresses no view as to whether these allegations will survive a challenge under, for example, Rule 12(b)(6). But Griffith has alleged enough to warrant service of his *pro se* complaint filed IFP.

III.    Griffith should be allowed the opportunity to file an amended complaint; if he does not, his initial complaint should be served only on Cinepolis; <u>and the Court should dismiss the claims against Brinker with prejudice</u>.

"Ordinarily, 'a *pro se* litigant should be offered an opportunity to amend his

complaint before it is dismissed.'" *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (quoting *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009)). But leave to amend is not required where an amendment would be futile, *i.e.,* "an amended complaint would still 'fail to survive a Rule 12(b)(6) motion,'" *Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)), or where a plaintiff has already amended his claims, *see Nixon v. Abbott*, 589 F. App'x 279, 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a *pro se* litigant to develop the factual basis for his complaint." (citation omitted)).

Here, should the Court accept or adopt these recommendations, it should allow Griffith leave to file an amended complaint within a reasonable time, to provide him an opportunity to allege his best case, particularly against Brinker. But, if Griffith elects not to file a timely amended complaint, the Court should dismiss the claims against Brinker with prejudice and serve the current complaint on Cinepolis under the IFP statute.

## Recommendation

The Court should grant Defendant Brinker International, Inc.'s motion to dismiss or, in the alternative, for a more definite statement [Dkt. No. 67] in part and deny it in part insofar as the Court should dismiss Plaintiff Samuel E. Griffith's claims against Brinker for failure to plausibly allege a claim without prejudice to

Griffith's ability to file an amended complaint within a reasonable time. The Court should further conclude that failure to file a timely amended complaint will result in the dismissal of Griffith's claims against Brinker with prejudice and the service of his current complaint solely on Defendant Cinepolis USA, Inc.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 28, 2021

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE