IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SAMUEL E. GRIFFITH, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | No. 3:20-cv-3455-G-BN |
| § | |
| CINEPOLIS USA, INC. and BRINKER § | |
| INTERNATIONAL, INC., § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
<u>**UNITED STATES MAGISTRATE JUDGE**</u>

Plaintiff Samuel E. Griffith filed a *pro se* lawsuit against two of his former employers. Senior United States District Judge A. Joe Fish referred Griffith's case to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. And the Court granted Griffith leave to proceed *in forma pauperis*.

Considering Defendant Brinker International, Inc.'s motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and through the screening obligation imposed by 28 U.S.C. § 1915, the Court dismissed the original complaint without prejudice to Griffith's filing an amended complaint. *See Griffith v. Cinepolis USA, Inc.*, No. 3:20-cv-3455-G-BN, 2021 WL 3059412 (N.D. Tex. June 28, 2021), *rec. accepted*, 2021 WL 3054865 (N.D. Tex. July 20, 2021) (*Griffith I*).

An amended complaint was filed. *See* Dkt. No. 12. And, again under a Rule 12(b)(6) motion filed by Brinker and Section 1915, the Court dismissed the amended complaint with prejudice in part and then ordered it served. *See Griffith v. Cinepolis*

*USA, Inc.*, No. 3:20-cv-3455-G-BN, 2022 WL 378843 (N.D. Tex. Jan. 11, 2022), *rec. accepted*, 2022 WL 377980 (N.D. Tex. Feb. 8, 2022) (*Griffith II*).

Defendant USA Cinema Services LLC (the entity Griffith identified as Cinepolis) (USA Cinema) now moves to dismiss Griffith's amended complaint under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. Nos. 30, 31. And Brinker International Payroll Company, L.P., which states it was erroneously identified in previous pleadings as Brinker International, Inc., now moves, under the Federal Arbitration Act (the FAA), 9 U.S.C. § 1 *et seq.*, to dismiss or stay this action and compel arbitration. *See* Dkt. No. 45.

The parties have briefed the pending motions. *See* Dkt. Nos. 34, 41, 43, 46-48. And the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant both motions to the extent that it should enter judgment under Federal Rule of Civil Procedure 54(b) to dismiss Griffith's claims against USA Cinema with prejudice and that, as to Brinker, it should retain the case, refer it to arbitration, and administratively close it pending the outcome of arbitration.

## Discussion

The applicable background of this litigation was set out in *Griffith I* and *Griffith II*. The undersigned assumes the parties are familiar with it, so it need not be repeated now.

**I.    The Court should grant USA Cinema's motion to dismiss and enter judgment dismissing Griffith's claims against USA Cinema with prejudice under Rule 54(b).**

Against USA Cinema, Griffith asserts claims of discrimination on the basis of

race, because he was demoted, *see* Dkt. No. 12 at 8, and defamation, based on "statements made by the defendant's agents and supervisors" "on the company's Teams platform," *id.* at 9 (emphasis omitted).

Griffith alleges that USA Cinema employed him as an assistant general manager at its Victory Park location in Dallas from June 22, 2019 to August 6, 2020, on which date he was informed by the regional manager that he was being demoted to service manager. *See* Dkt. No. 12 at 3.

Griffith further alleges that his demotion is at least related in time to comments by the interim general manager at the Victory Park location, who, on July 20, 2020, "communicated on Teams that the maintenance on the movie projectors at Victory Park were not done correctly or they were falsified as being completed" and "went on to say that whoever was responsible for the maintenance was being dishonest and lacked integrity." *Id.* (emphasis omitted); *see also id.* at 4 ("As proof, [the interim general manager] alleged that the maintenance was noted as being completed on the same day, but it was impossible to do so because there were eight projectors and the maintenance required 3 hours to perform.").

And Griffith alleges that "[t]hese comments were concerning" to him "because he and [the interim general manager] had completed one of the maintenances in question together"; that, on August 4, 2020, he addressed these comments with the interim general manager and the new general manager at Victory Park; and that, during this meeting, the interim general manager "alleged that the previous General Manager, an African American, had falsified maintenance and that [Griffith] was

doing the same" and "affirmed her beliefs by saying that she had never worked with [Griffith] before and her past experience warranted the distrust." *Id.* at 3-4.

Griffith also alleges that, in August 2020, the new general manager "increased his questioning, monitoring, and supervision of [Griffith]." *Id.* at 9.

On August 7, 2020, Griffith informed the general manager that he did not accept the demotion to service manager and would resign. *See id.* at 4. And he alleges that, on August 9, 2020, he learned that the regional manger (who informed Griffith that he was being demoted) "was aware of the meeting on August 4, 2020" between Griffith, the interim general manager, and the new general manager at Victory Park. *Id.*

In addition to discrimination, Griffith alleges that the interim general manager's "accus[ations] of alleged deficiencies in performance" against him – that he "falsified preventative maintenance on movie projectors" – made "on the company's Teams platform" and "verbally" to the new general manager – amounted to defamation in violation of Texas law. *Id.* at 9.

For the reasons set out below, Griffith alleges neither a plausible claim of employment discrimination based on race, in violation of Title VII, nor a plausible claim of defamation, in violation of Texas law.

And, because Griffith has already amended his complaint once after being notified of the applicable pleading standards – and considering the lack of substantive assertions in his response to USA Cinema's motion to dismiss, *cf. Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("[A] movant must give

the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects." (citation omitted)) – the Court should conclude that Griffith has now stated his best case and dismiss his claims against USA Cinema with prejudice.

### A. Griffith has not alleged against USA Cinema a plausible claim of employment discrimination based on race.

As the Court explained to Griffith prior to his filing the amended complaint,

> [t]o plausibly allege (and ultimately prove) discrimination … claims under Title VII requires that a plaintiff either rely on direct evidence of discrimination or alternatively proceed under a burden-shifting analysis. "'[D]irect evidence is rare'" and has been defined by the [United States Court of Appeals for the] Fifth Circuit "as 'evidence which, if believed, proves the fact without inference or presumption.'" *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 579 (5th Cir. 2020) (footnotes omitted). For example, "'[a] statement or document which shows "on its face that an improper criterion served as a basis – not necessarily the sole basis, but a basis – for the adverse employment action [is] direct evidence of discrimination."'" *Id.* (footnote omitted). And, because Griffith makes no allegation implicating direct evidence of Title VII discrimination … , he must proceed under the applicable burden-shifting analysis and first articulate a prima facie case as to each cause of action.
>> The prima facie elements of discrimination are that a plaintiff (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.
>
> *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005))….
>
> A plaintiff need not establish a prima facie case at the pleading stage. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019); *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). But a plaintiff must "plead sufficient facts on all of the ultimate elements of his claim to make his case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (citations omitted); *see also Meadows v. City of Crowley*, 731 F. App'x 317, 318 (5th Cir. 2018) (per curiam) ("*Raj*, however, does not exempt a plaintiff from alleging facts sufficient

>to establish the elements of her claims." (citations omitted)).
>
>So, at this stage, the Court must ask whether Griffith has provided enough facts to allege an actionable claim of employment discrimination … under Title VII. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002). And, if he "has not pled such facts," it is "proper[ to] dismiss [his] complaint." *Meadows*, 731 F. App'x at 318; *see also Cicalese*, 924 F.3d at 766-67 (noting that the district court's "task is to identify the ultimate elements of [the applicable employment-related] claim and then determine whether the" plaintiff has pled those elements but that a "district court err[s if it] require[es a plaintiff] to plead something beyond those elements to survive a motion to dismiss").

*Griffith I*, 2021 WL 3059412, at *7.

The amended complaint too fails to include allegations implicating direct evidence of Title VII discrimination. *See Griffith II*, 2022 WL 378843, at *4. So, to allege a plausible discrimination claim against USA Cinema, Griffith must plead each of the prima facie elements, including that was discharged or suffered some adverse employment action by USA Cinema.

Griffith resigned from USA Cinema, he does not allege that he pursued an internal grievance prior to doing so, and he waited until approximately one week after his resignation to file an EEOC complaint. *See* Dkt. No. 12 at 4. But he characterizes his departure from USA Cinema as a constructive discharge. *See id.* at 3.

"In the context of constructive-discharge cases, when possible, a reasonable employee would and should attack unlawful discrimination within the context of existing employment relationships, such as pursuing an internal grievance process or filing an EEOC complaint, instead of immediately resigning." *Garvin v. Sw. Corr., L.L.C.*, 391 F. Supp. 3d 640, 643 (N.D. Tex. 2019) (citing *Boze v. Branstetter*, 912 F.2d 801, 805 (5th Cir. 1990)).

This is why, "[t]o prove a constructive discharge, a 'plaintiff must establish that

working conditions were so intolerable that a reasonable employee would feel compelled to resign.'" *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 924 (5th Cir. 2022) (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (quoting, in turn, *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir. 1997))); *see also Young v. Sw. Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975) ("The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee." (citations omitted)).

"Courts analyze constructive discharge claims under an objective standard, looking at the facts of each case to answer: 'Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?'" *Millan v. Bexar Cnty., Tex.*, No. SA-21-CV-0659-JKP-HJB, 2022 WL 62541, at *9 (W.D. Tex. Jan. 5, 2022) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)).

From the perspective of a reasonable employee, "[c]onsideration of whether [Griffith] was constructively discharged is to be viewed in the totality of the circumstances." *Brown v. Affiliated Computer Servs., Inc.*, No. 3:01-cv-135-P, 2002 WL 576028, at *3 (N.D. Tex. Apr. 12, 2002) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

> And courts in this circuit have
>
> considered the following events relevant in determining whether a reasonable employee would feel compelled to resign:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.

*Bye*, 49 F.4th at 924 (quoting *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991 (5th Cir. 2008) (quoting, in turn, *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 481 (5th Cir. 2008))).

> Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim. Aggravating factors used to support constructive discharge include hostile working conditions or the employer's invidious intent to create or perpetuate the intolerable conditions compelling the resignation. [And t]he resigning employee bears the burden to prove constructive discharge.

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 342 (5th Cir. 2005) (cleaned up).

At this juncture, Griffith need not prove that he was constructively discharged. But, to survive USA Cinema's motion to dismiss, Griffith must allege enough facts to plausibly allege a constructive discharge.

And absent further allegations from which the Court may infer that Griffith's working conditions – during the short timeline alleged in the complaint (from July 20, at the earliest, to August 9, at the latest) – had become so intolerable that a reasonable employee in the same position would have felt compelled to resign, it is not enough to state that he was increasingly scrutinized and was told that he would be demoted following the investigation into the projector maintenance. *See, e.g.*, *Aikens v. Banana Republic, Inc.*, 877 F. Supp. 1031, 1040 (S.D. Tex. 1995) ("Demotions alone do not give rise to a viable constructive discharge claim." (citing

*Jurgens v. EEOC*, 903 F.2d 386, 391 (5th Cir. 1990))); *see also Boehms v. Crowell*, 139 F.3d 452, 461-62 (5th Cir. 1998) ("These facts alone convince us that the working conditions that would have confronted Boehms as operations manager" – "a one-level demotion and a loss of some supervisory responsibilities" – "were 'not so intolerable that a reasonable person would have felt compelled to resign.'" (quoting *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 755 (5th Cir. 1986))); *McCann v. Litton Sys., Inc.*, 986 F.2d 946, 952-53 (5th Cir. 1993) ("[B]oth the permanence of the demotion and whether the demotion is a 'harbinger of dismissal,' are 'factor[s] to consider under the constructive discharge analysis.' Here, there is no evidence to indicate that the demotion offered to McCann was either permanent or a 'harbinger of dismissal.'" (quoting *Stephens v. C.I.T. Grp./Equip. Fin., Inc.*, 955 F.2d 1023, 1028 (5th Cir. 1992) (quoting, in turn, *Jurgens*, 903 F.2d at 392))).

In fact, "[d]iscrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge." *Bye*, 49 F.4th at 925 (quoting *Brown*, 237 F.3d at 566).

And, even if the Court were to liberally construe the complaint as Griffith's alleging that the proposed (but never effectuated) demotion is itself the adverse employment action, Griffith still has not provided enough facts to plausibly allege that prima facie element. *See, e.g.*, *Peterson v. City of Dall.*, 135 F. App'x 635, 638 (5th Cir. 2005) (per curiam) ("To establish a demotion, an employee must show a loss in duties, benefits, or compensation. A reassignment from a prestigious to a less desirable position is insufficient to establish an adverse employment action."

(citations omitted)).

Griffith has therefore failed to allege a plausible claim of employment discrimination. And the Court should now dismiss this claim with prejudice.

> **B.  Griffith has not alleged against USA Cinema a plausible claim of defamation.**

To maintain a valid claim of defamation under Texas law, a plaintiff must demonstrate that the defendant: (1) published a statement; (2) containing assertions of fact that are defamatory, injuring the plaintiff's reputation; (3) while acting with either actual malice, if plaintiff is considered a public official or public figure, or negligence, if plaintiff is a private individual, regarding the truth of the statement. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *N.Y. Times v. Sullivan*, 376 U.S. 254, 279-80 (1964).

But, "[u]nder Texas law, a qualified privilege extends to any communication by an employer about an employee made to a person having a corresponding interest or duty in the subject matter of the communication." *Frakes v. Crete Carrier Corp.*, 579 F.3d 426, 430 (5th Cir. 2009) (citing *Burch v. Coca-Cola Co.*, 119 F.3d 305, 323 (5th Cir. 1997)); *see also Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) ("References and accusations made by an employer about an employee to one with a common interest clearly come within this doctrine." (citations omitted)); *Frakes*, 579 F.3d at 430 (supervisory employees and individuals working directly with the plaintiff are protected by the privilege (citation omitted)); *Gutierrez (Santiago) v. Intex Aviation Servs., Inc.*, No. 3:91-cv-2080-H, 1992 WL 188266, at *2 (N.D. Tex. June 30, 1992) (both communication of a negative performance evaluation by a

supervisor to upper management and circulation among company executives of letters to plaintiff accusing him of wrongdoing protected by the privilege (citations omitted)).

In general, "this qualified privilege acts as a complete defense to a claim of defamation unless the employer's statement is made with 'actual malice' or the privilege is abused." *Frakes*, 579 F.3d at 430 (citing *Burch*, 119 F.3d at 323; *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995)).

Indeed, "[i]f the facts show a relationship giving rise to the qualified privilege, the plaintiff has the burden of proof to show that the statement was made with actual malice, thus defeating the privilege." *McIntosh v. Partridge*, 540 F.3d 315, 326 & n.16 (5th Cir. 2008) (citations omitted; finding that the district court erred when it dismissed the "defamation claim for failure to state a claim under Rule 12(b)(6) based on qualified privilege" where the complaint alleged that the statements were made with malice); *see also Smith v. Shred-It USA*, No. 3:10-cv-831-O-BK, 2010 WL 3733907, at *4 (N.D. Tex. Aug. 12, 2010) (similar), *rec. accepted*, 2010 WL 3733902 (N.D. Tex. Sept. 23, 2010).

And, while some district courts have determined that whether the qualified privilege applies should be resolved in the context of summary judgment, *see, e.g.*, *Karage v. First Advantage Co.*, No. 3:09-cv-604-M, 2010 WL 1062601, at *2 & n.14 (N.D. Tex. March 22, 2010), application of the privilege may be resolved on the pleadings where appropriate, *see, e.g.*, *Tyson v. Austin Eating Disorders Partners*, No. A-13-CA-180-SS, 2013 WL 4774757, at *2-*3 (W.D. Tex. Aug. 30, 2013) (granting

motion to dismiss where the plaintiff did "not otherwise contest the applicability of the qualified privilege, [so] his failure to plead any facts showing actual malice is dispositive of all his defamation claims"); *see also Brownlow v. Lab. Corp. of Am.*, 254 F.3d 1081, 254 F.3d 1081, 2001 WL 563785, at *1 (5th Cir. May 14, 2001) (affirming dismissal of defamation claim on the basis that the qualified privilege applied). *Cf. Russell v. Chevron U.S.A., Inc.*, Civ. A. No. 18-4157, 2018 WL 4816151, at *4 (E.D. La. Oct. 4, 2018) ("The Louisiana Supreme Court has explained that whether a defendant has abused a qualified privilege is 'generally a fact question for the jury.' But when on the face of a complaint it appears that the defendant's alleged statements are entitled to a qualified privilege, courts have inquired at the motion to dismiss stage whether the plaintiff has pleaded facts alleging the defendant acted with the requisite scienter to show an abuse of the privilege." (citations omitted)).

Here, the facts alleged reflect a relationship giving rise to the qualified privilege, and Griffith fails to allege (or provide facts from which the Court may infer) that the interim general manager made the subject statements with malice.

Griffith has therefore failed to allege a plausible defamation claim under Texas law. And the Court should now dismiss this claim with prejudice.

**II. The Court should grant Brinker's motion to compel arbitration to the extent that, as to Brinker, it should retain the case, refer it to arbitration, and administratively close the case pending the outcome of arbitration.**

Brinker moved twice to dismiss Griffith's claims before answering the amended complaint on January 25, 2022. *See* Dkt. No. 7, 15, 20. And, only after the Court entered a scheduling order under Federal Rule of Civil Procedure 16(b), on

- 12 -

March 10, 2022, based on the parties' joint Federal Rule of Civil Procedure 26(f) status report, *see* Dkt. Nos. 25, 27, 28, did Brinker move to compel arbitration, on June 6, 2022.

Such a record may be a basis to find that Brinker has waived its right to arbitrate. *See, e.g.*, *Vollmering v. Assaggio Honolulu, LLC*, No. 2:22-CV-00002, 2022 WL 6246881, at *12 (S.D. Tex. Sept. 17, 2022) (concluding that, after *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022), "the surviving test for waiver in this circuit is the remainder of Fifth Circuit's prior test: whether the party has substantially invoked the judicial process" (citations omitted)), *rec. adopted*, 2022 WL 6250679 (S.D. Tex. Oct. 6, 2022); *Forby v. One Techs., LP*, ___ F. Supp. 3d ____, No. 3:16-cv-856-L, 2022 WL 2871815, at *3 n.3 (N.D. Tex. July 21, 2022) (recounting that the Fifth Circuit reversed the court's prior decision to compel arbitration "because, in filing a motion to dismiss all claims without seeking to compel arbitration, [defendants] 'substantially invoked the judicial process and that Forby was prejudiced thereby' and noting that, subsequent to that reversal, "following a recent Supreme Court decision, '[P]rejudice is not a condition to finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA'" (quoting *Morgan*, 142 S. Ct. at 1714; citation omitted)).

But Griffith did not raise waiver in his response to the motion to compel arbitration. *See* Dkt. No. 47. And the undersigned finds that, even considering the record and Griffith's *pro se* status, it would be inappropriate to raise this defense *sua sponte*. *See Austin v. S.S. Clerks & Checkers Int'l Longshoremen Ass'n No. 1351*, Civ.

A. No. H-12-2700, 2013 WL 6327990, at *1 n.9 (S.D. Tex. Dec. 4, 2013).

Nor may Griffith raise this defense in any objections he may file to these findings, conclusions, and recommendation. *See Freeman v. Cnty. of Bexar*, 142 F.3d 848, 851 (5th Cir. 1998) ("[A] party who objects to the magistrate judge's report waives legal arguments not made in the first instance before the magistrate judge." (citing *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994))).

So, turning to consideration of the motion to compel, "arbitration is a matter of contract, so "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).

Consequently, under the "two-step process" to "analyze whether a party can be compelled to arbitrate, courts must ask first whether "'the party has agreed to arbitrate the dispute.'" *Janvey v. Alguire*, 847 F.3d 231, 240 (5th Cir. 2017) (per curiam) (quoting *Sherer v. Green Tree Serv. L.L.C.*, 548 F.3d 379, 381 (5th Cir. 2008)).

"If the party opposing arbitration has agreed to arbitrate," courts "'then ask if "any federal statute or policy renders the claims nonarbitrable."'" *Janvey*, 847 F.3d at 240 (quoting *Sherer*, 548 F.3d at 381 (quoting, in turn, *JP Morgan Chase & Co. v. Conegie*, 492 F.3d 596, 598 (5th Cir. 2007))); *see also Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530-32 (5th Cir. 2019) (concluding that, "[i]f the trial court finds that a valid agreement to arbitrate exists and that the claims asserted fall within that agreement, it is required to compel arbitration," but, "[i]f, on the other hand, the trial court determines that there is no arbitration agreement

between the parties, or that no dispute between them falls within the scope of the binding arbitration agreement, the court must deny the motion to compel arbitration with prejudice"(citations and footnote omitted)).

As to the existence of an agreement to arbitrate, Brinker does not provide the Court a copy of the signed arbitration agreement, although, after Griffith challenged (without evidence) the existence of such an agreement on response, *see* Dkt. No. 47, Brinker informed the Court that it provided "the signed arbitration agreement to [Griffith] on or about January 21, 2022," Dkt. No. 3 at 8 n.2.

Absent placing the actual signed agreement in the record, Brinker relies on a declaration from its Senior Vice-President, General Counsel, and Secretary, who testifies that

> [a]t all relevant times, Brinker maintained a hiring policy that required all applicants to execute an Agreement to Arbitrate before Brinker would consider them for employment.
> Mr. Griffith would not have been hired by Brinker if he had not signed Brinker's Agreement to Arbitrate.
> Notwithstanding the requirement to execute an Agreement to Arbitrate, Brinker maintains a policy, expressly set forth in its handbook, that requires all employees, as a condition of employment, to agree to arbitrate any potential disputes with Brinker rather than litigate the same in court.
> On or about March 1, 2013, after the decision had been made to hire him, Mr. Griffith received a copy of the handbook containing Brinker's arbitration policy, and he provided to Brinker a signed acknowledgment indicating that he read, understood and would comply with all of the policies addressed by the handbook, including Brinker's arbitration policy.
> At all times relevant to this action, Brinker employed all employees working at the Grapevine Mills Chili's, including Mr. Griffith.

Dkt. No. 45-1, ¶¶ 3-7.

The Fifth Circuit "has not articulated precisely what quantum of evidence is

necessary to prove or disprove the existence of an agreement to arbitrate, but [it has] explained that '[t]he party resisting arbitration bears "the burden of showing that he is entitled to a jury trial under § 4 of the Arbitration Act,"'" where requested, as to the making of the arbitration agreement. *Gallagher v. Vokey*, 860 F. App'x 354, 357 (5th Cir. 2021) (per curiam) (quoting *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992) (quoting, in turn, *Bhatia v. Johnston*, 818 F.2d 418, 422 (5th Cir. 1987))).

The resisting party must also "make at least some showing that under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true ... [and] he must produce at least some evidence to substantiate his factual allegations." *Id.* (quoting *Dillard*, 961 F.2d at 1154).

Thus, "[t]o put the Agreement's existence 'in issue' for FAA purposes," Griffith "'must make at least some showing that under prevailing law, [he] would be relieved of [his] contractual obligations to arbitrate if [his] allegations proved to be true and produce some evidence to substantiate [his] factual allegations.'" *Butler v. Z&H Foods, Inc.*, No. 21-20086, 2021 WL 4073110, at *1 (5th Cir. Sept. 7, 2021) (per curiam) (quoting *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 710 (5th Cir. 2002); citing 9 U.S.C. § 4). And, "where competent evidence showing the formation of an agreement to arbitrate has been presented, § 4 requires a party resisting arbitration to produce *some* contrary evidence to put the matter 'in issue.'" *Gallagher*, 860 F. App'x at 357-58.

Griffith provides no evidence to the contrary. So, under these circumstances,

the Court may rely on the declaration provided by Brinker as prima facie evidence of formation. *Cf. Dow v. Keller Williams Realty, Inc.*, ___ F. Supp. 3d ____, No. 4:21-cv-1209-P, 2022 WL 4009047, at *4 (N.D. Tex. Sept. 2, 2022).

The same declaration may also serve as evidence of the broad scope of the agreement. *Compare* Dkt. No. 45-1, ¶ 5 (Brinker "requires all employees, as a condition of employment, to agree to arbitrate any potential disputes with Brinker rather than litigate the same in court."), *with Dow*, 2022 WL 4009047, at *4 ("Broad arbitration clauses cover more than contractual disputes. They 'embrace all disputes between the parties having a significant relationship to the contract, regardless of the label attached to the dispute.' Thus, a dispute must only 'touch matters' covered by a broad arbitration clause to fall within its scope. All of Dow's claims against the KWRI Defendants 'touch matters' covered by the Arbitration Clauses. Thus, her claims are within the Clauses' scope." (quoting *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067, 1068 (5th Cir. 1998))).

Insofar as Griffith argues "that a federal statute or policy renders his claims nonarbitrable," "Title VII claims can be subject to mandatory arbitration agreements." *Robertson v. U-Haul Co. of Tex.*, No. 3:10-cv-2058-D, 2011 WL 444773, at *3 (N.D. Tex. Feb. 7, 2011) (citations omitted); *see Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 748 (5th Cir. 1996). And Brinker's evidence reflects that the arbitration agreement would be enforceable under Texas law. *See, e.g., Robertson*, 2011 WL 444773, at *3-*4.

The Court should therefore grant Brinker's motion and compel arbitration but

elect to retain this case and administratively close it pending the outcome of arbitration. *See, e.g.*, *Psara Energy, Ltd. v. Advantage Arrow Shipping, L.L.C.*, 946 F.3d 803, 807-08 (5th Cir. 2020).

**Recommendation**

The Court should grant Defendant USA Cinema Services LLC's motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) [Dkt. No. 30] and enter judgment under Federal Rule of Civil Procedure 54(b) to dismiss Plaintiff Samuel E. Griffith's claims against this defendant with prejudice, and the Court should grant Defendant Brinker International Payroll Company, L.P.'s motion to compel arbitration under the Federal Arbitration Act [Dkt. No. 45] insofar as, to Brinker only, the Court should retain the case, refer it to arbitration, and administratively close it pending the outcome of arbitration.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 18, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE